Good afternoon, Your Honors. It's a pleasure to be here and appreciate the opportunity to present my arguments. The District Court erred when denying Dr. Oh, I'm, yes, yes, Your Honor. My name's Chris Davis and I'm here for the appellants, representing the, with the Office of the Attorney General. The District Court erred when denying Dr. Naughton's motion for summary judgment because he is entitled to qualified immunity as he did not violate clearly established constitutional right beyond debate. Dr. Naughton did not violate the Eighth Amendment by removing a non-cancerous fatty growth, referred to as a lymphoma, without anesthetic or medical support staff because that decision is a classic example of a matter left to Dr. Naughton's medical judgment. Excuse me, counsel. Before we get to your argument on the merits, I'm, I was hoping that you could address the issue about whether or not we lacked jurisdiction because of the timeliness of your appeal, given that it was filed beyond the 30 days that Rule 4 requires. Well, I, of course, of course, Your Honor. This Court has jurisdiction because Robinson concedes that this appeal is timely. But where does he concede that? Well, he concedes that it's the plain language of the rule. That's what I was getting at in the last sentence. He doesn't concede that the appeal is timely. Well, he concedes, though, under the plain language of the rule it's timely. Well, he concedes the language of the rule, but does not concede that this appeal is timely. That's why the, that's why we're discussing this, because he does not concede that. So the fact that a person concedes the language of the rule doesn't mean they're conceding the argument. No, I didn't say that they were conceding the argument. I just said under the plain language he concedes. Anyway, thank you, Your Honor. Under the plain language of Rule 4, 54, and 58, the order denying a motion for summary judgment asserting qualified immunity is a judgment. And the time. What makes that? Is there a case that says, um, the order denied. There are two cases that say that. Counsel, let me finish. What's your strongest case for the proposition that an order denying summary judgment resulting in an interlocutory appeal is a final order? Okay, there are two cases that say that. There's the Ucart case in the Fifth Circuit. Well, is there a Ninth Circuit case that says that? Your Honor, there is not a Ninth Circuit case, and I think that's the reason why we're here today. Okay. And why we're arguing this in four cases. Are you aware of the fact that our court has, in fact, in several cases, uh, dismissed appeals for lack of being timely under Rule 4 when, when the notice of appeals filed beyond the 30 days required by Rule 4. Your Honor, in those cases. Are you, are you aware of those cases? Yes, Your Honor, I am. But in, I don't, I'm also aware that, that this issue was never raised in any of those cases. And therefore, if the issue is not raised, this court didn't have an opportunity to consider the argument. I mean. But those, those cases, in those cases, our court dismissed the appeals untimely. That's what they, Your Honor, that's right, they did. Okay. But the thing is, is you can, you can, a person can do the opposite and say, and, and, and fail to argue that this court has jurisdiction. And therefore, the court's not going to address that issue. But here, we're doing that. We are, we are, we are arguing here. And therefore, this time, the court has to consider the issue. The court didn't have to consider the issue in those cases. But in this case, it does, because we made the argument. Is there any difference in your view in how the rules apply to a appealable order that denies qualified immunity from how it would appeal, from how it would apply to an order granting or denying a preliminary injunction? Your Honor, whether it's, I, I, you know, I, I didn't look into that. I, I thought about that, but I didn't look into that seriously. But, you know, under my, my, my, my, my gut reaction is, is that there wouldn't be a difference. Would or would not? Would not be a difference. Okay. So, so then, I, I mean, I, I. Because, because, let me explain why. If you want, if, it's okay. Oh, I'm sorry. Did I interrupt you? No, no, go, go ahead. Okay. Because the rule says, okay, the rule defines judgment as any, as any order from which an appeal lies. And since an, an appeal lies from a, from a denial of a motion for preliminary injunction, then that would be a judgment. And because it's a judgment, it requires a separate document. And without a separate document, judgment is not entered or judgment is not entered until a separate document is entered or until 150 days is allowed from the time the order is entered. Right, right. So, I mean, I, I, I think that, that is the logic of your position. And so then I guess the next question is, you know, I, I've, I've looked and there are lots of cases from this circuit and, and other circuits dismissing PI appeals that were filed more than 30 days after the order was entered. Are, are you aware of any case in which a court has accepted this, your position in the PI context? I am not, Your Honor. And, and, and because, but the thing is, is again, I would say, Your Honor, that it's, it's because the issue hasn't been raised. And because, because we are raising the issue here, this court now has to confront that issue. And because also the plain language involves. I mean, but I, I mean, I guess maybe one thing that one might conclude from the, our, our circuit's uniform practice in qualified immunity appeals that Judge Desai mentioned, and apparently every circuit's practice in preliminary injunction appeals, is that, you know, the fact that no one has ever thought of this might counsel some skepticism as to whether it is in fact correct, might it not? Well, it's, it's not that no one has ever thought of it because we have two circuits that ruled the way, ruled in my favor in both instances. Is this a new policy? In fact, those are the only two circuits that have ruled. Excuse me, counsel. Sorry. Is this a new policy that your office has adopted? Because it doesn't seem to have really been an issue prior to, and we have, you know, several cases on the docket this morning, as, as I think you're aware, since you're arguing all of them, that this is, is a consistent issue that's now occurring. Well, I think the thing that changed was, is that, was that I came on board to the, to the Attorney General's office and began handling the appeals. And I was reviewing cases that I thought should be appealed. And in, when reviewing these appeals, I thought these were cases that should have been, should have been appealed, but weren't. And I was aware, because of my, my considerable appellate practice, that the separate document required rule of the separate document rule. Okay. So let me ask you this, just as a, as a policy and sort of practical matter. I understand why the separate document rule exists for, for final judgments. Why do you need a separate document for, for collateral orders? What, what is unclear about the district court's denial of qualified immunity in this case that would somehow weigh in favor of requiring, in this case, you know, more than 30 days, in some of the cases we're hearing this morning, 150 days? Because I can tell you, from my practice here in the, well, since I've come to the Attorney General's office, when the district court makes rulings, it's not absolutely clear that that's their final ruling on the issue. Are you telling me that it's unclear to you that the district court has, has denied? In some instances, it is unclear. Could you let her finish her question, please? Thank you. Oh, sorry. It, it, it is hard for me to imagine that the district court's ruling is somewhat, is somehow unclear such that a separate document is required. Well, you know, you could also say the same thing with the end of trial. You know, you have a jury verdict. It's decided all cases. It's clear, right? But we still have a separate document required because the Supreme Court has said that this rule needs to be mechanically applied. You're not supposed to take into this consideration about whether or not— Counsel, it's an interlocutory appeal. So that, in and of itself, suggests that it's not final. No, it doesn't. Your Honor, I respectfully disagreed that that's not the case because if they did, for example, I would refer you to the advisory committee notes, right? They, they flagged this issue. They said that, hey, you know— And they say that, and the advisory committee notes actually say that it shouldn't be applied, that, that the separate document rule should not be applied to collaborators. That's not what they say, Your Honor, and I would respectfully disagree with that conclusion. The notes declare that, in fact, the notes actually declare the separate document requirement continues to apply to interlocutory order— Continues to apply. Yeah. So it says there— Yeah, the separate document requirement continues to apply— Oh, continues to apply to what? To, to orders that appeal to interlocutory order that is appealable as a final decision. That's what they said.  Right. That's the, that's the point. No, it's interlocutory. Sorry, Your Honor. If, if it's a final decision. The, the problem with that argument is it's not a final decision because it, the denial of qualified immunity just means you go to trial. So it's not a final decision. No, it is a, it is a final decision. The Supreme Court of Brennan and Perin both say it is a final decision. It's final enough to allow an appeal. Right. But it's, if it were a final decision, there would be no more litigation after it. Right. And then, and then, and then the advisory committee notes continue and say, hey, we would have to have drastic surgery to the rule in order to do this. Right? And then they say, but, you know, pragmatically, we're not going to do the surgery right now. And so the order continues to apply. It's just their opinion that it should be a different way. Let me show you the language from the advisory committee notes, which, which I, I am sure you have read. I have no doubt that you, you have looked at this closely. But the committee notes state, and I quote, appeal time should start to run when the collateral order is entered without regard to creation of a separate document and without awaiting expiration of the 150 days. That's what they say it should do. That's what they say the rules should do. But that's not what they say the rules do do. What they say they should do. And then it goes on to say that in order to reach that result, we had drastic surgery to the rule, which they did not want to do that. So they said, for the moment, we're going to pragmatically disregard amending the rule. And so they, that's what they made a decision. They made a decision not to do this. I kind of disagree with the advisory committee, the advisory committee notes on that issue. Because there is, for example, in rule, I think it's rule 56, that talks about, it talks about that there are, in the notes it says, there are exempt certain orders. For example, rule 68B order, it's exempt. It doesn't have to have a separate document. They could have just put in another provision in there and said, hey, guess what? Interlocutory appeals with respect to qualified immunity do not apply. They could have put it in vote. Interlocutory appeals with respect to preliminary injunction does not apply. They didn't do that, Your Honor. All right, counsel. You've exceeded your time. We'll give you a minute for rebuttal. Thanks.  Counsel?  Good morning, Judges Rawlinson, Miller, and Desai, Jesse Hogan of Snell and Wilmer, for Mr. Robinson, the APA Lee. May it please the court. Unless the court prefers otherwise, I'll start with the timeliness issue since it seems like that's an interest. You concede that under the plain language of the rule, that the state argument is correct? No. So, our argument is that Dr. Naughton's notice of appeal is untimely because when properly considered, rule 58 here, requiring a separate document, does not apply. And that's for three reasons. First, rule 58, when you consider in proper context, and it's black letter law, this court, that you consider rules in their context. You don't isolate words or phrases. You also don't isolate rules. You consider them as they work together. And here, rule 58 applies only to judgments. You then have to go to rule 54, which defines judgments as any order from which an appeal lies. But that definition needs to be considered in context, too. As an initial point, that definition hasn't changed since 1938, which is well before the collateral order doctrine was even established by the Supreme Court in 1949. And it's even well before when qualified immunity orders were held by the Supreme Court to fall into that doctrine. So, the original definition couldn't have encompassed a collateral order such as the one here. The second point is... I guess I don't understand a lot of that point. I mean, the original definition wouldn't have covered the judgment in Title VII cases because Title VII hadn't been enacted then. But those judgments are still a judgment, and a qualified immunity order is still an order from which an appeal lies. Sure. Sure, Your Honor. That's a good point. The second point is, at worst, Rule 54A, which defines judgments, is ambiguous. Because if you look at that rule, and then you also look, for example, at Rule 4, which says judgments or orders, there would just be no need to say or orders if every appealable order is a judgment. Well, but I think the answer to that maybe is that 54 says judgment as used in these rules, which is the civil rules. Yeah. The language you're referring to is in FRAP 4. So, that doesn't incorporate 54's definition, and so that's why it needed to say order or order there so that there's no superfluity. So, what's the answer to that? Sure. I think, I mean, while there may not be a direct contradiction because you're right that it's two separate rules, there's at least some tension between the rules, one set labeling judgment, orders, and decrees, and then when you have Rule 58 saying just, you know, judgments or orders, construing them both, which you have to do for timeliness and jurisdiction of this court, there's at least some tension, which leads me to my point that you do then get to go to the committee notes. This court gives them weight when there is some ambiguity, and the committee notes, like Judge Desai noted, are pretty clear in saying that the appeal time should start to run when the collateral order is entered without regard to creation of a separate document, and the 10th Circuit has... The language that opposing counsel talked about, that that's how it should work, but that's not, in fact, how it does work. How do you reconcile those statements? Yeah. I mean, I disagree that the notes say that that is not how it does work. What's the reason for the language after the part you quoted? Because the committee notes are talking about several different types of tension in the rules. They're talking about interlocutory orders, they're talking about, you know, it's possible in theory that this rule could be read to apply to collateral orders, but again, I mean, hypertextuality isn't always the right answer. You're supposed to read the rules in context, and they're supposed to work together. So I think the committee notes language that, you know, the collateral order, for collateral orders, the appeal time should start to run from when it is entered without regard to a separate document is an instruction. That's the most important thought, and then everything after that is kind of an afterthought? Is that your argument? No, I just think that that's the most direct thought and, like, instruction of the committee versus the other thoughts are talking about, you know, in theory this might be read this way or things of that like. And I just wanted to note the Tenth Circuit has concluded or at least endorsed the position that we're arguing today that the committee notes make clear that Rule 58 does not apply. What case is that? It's Berry v. Asarco, Inc. It is. What are we to make of the committee's statement in the last sentence that it's better to leave this conundrum to the pragmatic disregard that seems its present fate? Do you think it's appropriate for the committee to invite us or for us to accept the invitation to disregard portions of the rules in the interests of pragmatism? I don't know exactly what it takes for the committee to do this drastic surgery that it mentioned it would take to make the rules, you know, crystal clear. But I do think, and of course the Court isn't able to rewrite the rules either. So I think that that was the committee's, I guess, best efforts, you know, after saying it does not apply to collateral orders and after probably looking at the behavior of courts and litigants, we know that this is not a common thing. It's really only in these five cases that are before the Court that we footnoted. It's not, like, a common argument made or even a common set of circumstances. So I think that was the acknowledgement of the committee that this doesn't come up. It seems like courts are construing the rules properly and in context. And so that's what I think that comment sort of addressed. And your friend on the other side says that his interpretation of the rules would apply to preliminary injunction appeals just as it does to collateral order appeals. Do you think that's right or do you think there's any reason that they would be treated any differently? Sure. I mean, I think that, yeah, my friend on the other side, I think, argues for potentially a more expansive definition or application of Rule 58 than what we need in this case since we're just addressing collateral orders here. But I do think that the argument would encompass basically any interlocutory order under 1292 or preliminary injunctions or orders not certifying a class. There's just a proliferation of different orders that would fall under his argument. And from our broad review, we don't see separate documents issued ever in any of those cases. And that's why I wanted to talk about the practicalities of my friend on the other side's argument. We have never found a case in this circuit and we didn't do an exhaustive search out of it but where a separate document was entered when a motion for summary judgment was denied on the issue of qualified immunity nor did we find a case where such an order was denied then the appeal was after the 30 days and the court went ahead and decided the case. So that would mean in this circuit, for example, 100 plus district judges are doing something consistent, litigants are operating in a consistent way and to adopt my friend on the other side's argument would create a seismic shift in what the district courts need to do. And what complicated... I think district courts would, as I think the committee notes indicate, would have to take time. There's not just sort of an administrative burden that district courts would have to speculate about the potential appealability of every order that they issue to make a determination. And in fact then commenting sort of implicitly on whether or not a particular order is one that could be taken up on an interlocutory appeal. I agree, Justice. I mean the collateral order doctrine is complicated and even just in qualified immunity cases we know that's complicated as well. Cases before this court like Anderson when you're talking about whether the qualified immunity was denied based on factual disputes or legal issues it's complicated and that'll require district courts to do that analysis before it comes up here on appeal and then the court would then have to do it anyways again for its own jurisdiction. Do you know anything about how... I mean the D.C. Circuit has had this role for 20 plus years. Do you know anything about how it's worked there? So again, I didn't do an exhaustive client and then address either of the legal issues whether there's a violation or clearly established law so I think the court is free to do that. Thank you, Counsel. Thank you, Your Honors. Thank you, Your Honors. I appreciate your arguments and I'd like to comment on one of the comments that Judge Seid made and that's she said that it might be complicated for the district court to decide when a final judgment is entered well if it's complicated for the district court it's going to be also complicated for the parties to also know because actually the district court is really the only party that knows when it's really made a final decision it knows when it's made a final decision and therefore that's why they put the onus on the district court to do this and again, like I said, in DeSaludra's case the Supreme Court has said this has to be mechanically applied that means that you've got to follow the way that the rule goes mechanically if somebody wanted to make an exception, for example in the advisory committee notes, they would have done it they would have amended the rule like I said, they could have easily done it by putting another exception for these rules and they didn't do it. They decided not to reach that result and I don't know why they decided not to do that, but they didn't I would also like to respond to Judge Rollins' argument I'm not arguing, I'm deciding I apologize, Your Honor your comment the case I would rely on is the Corrigan case in the Ninth Circuit because the Corrigan case, while it didn't face this exact thing of an interlocutory appeal it talks about that this rule has to be mechanically applied and it said, the court reached the same result as the case in Rosario and it said the separate document rule should be interpreted to prevent the loss of a right appeal not to facilitate it. That's what the argument on the opposing counsel is doing their argument facilitates the loss of appeal the reason why this thing is to be mechanically applied is because we're entitled to rely on the plain language of the rule we are entitled to do that if they want to make different rules, the court can always go ahead and do that the Supreme Court changes the rules all the time and they do it because they think it needs to be done but the Supreme Court has not made that decision in this case Counsel, on the merits, is there at a minimum a material issue of fact, dispute of fact regarding this there is not, Your Honor the court in the Carley case Judge Bybee was very clear on that that this court needs to, there is no issue of fact, this is an issue of law qualified amenity is an issue of law and therefore, you have to just construe the facts in favor of the plaintiff, and then after you do that, see as a matter of law whether or not there's clearly established law So, the plaintiff asserted that he was caused pain because the doctor made a surgical incision without anesthesia Your Honor, that's a medical judgment for the doctor to make anesthesia has its own risks, you know pain could be one thing that happens, and pain happens all the time when doctors are examining patients, for example my wife goes to the chiropractor, and she needs her back adjusted well, when her back's adjusted, it causes her pain but it's better for her in the long run surgery without anesthesia is pretty rare no, it's not, Your Honor when you're talking about these things he wants to make this something big, but if you look at what a lipoma is it's a piece of fatty tissue, you know, to go in and go slice and it's off, it's not a thing that's going to cause a lot of pain and that's the doctor's medical judgment taking the facts in the light most favorable to him he said it caused him a lot of pain so, if we take the facts in the light most favorable to him, he suffered a lot of pain no, but Your Honor, it not only has to suffer pain Dr. Naughton has to know that he suffered pain there's no evidence in the record that he actually said to Dr. Naughton that he suffered any pain, and therefore there's no way he knows, without knowledge there is no deliberate difference there's no clearly established law that says Dr. Naughton was there thank you, Your Honor, appreciate the opportunity thank you to both parties the case just argued is submitted for decision by the court the next case is Patterson v. Benson
judges: RAWLINSON, MILLER, DESAI